# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1857V
Filed: April 14, 2022

| | |
|---|---|
| JERMAINE A. HAMPTON, <br><br> Petitioner, <br> v. <br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | Shoulder Injury Related to Vaccine Administration; SIRVA; Influenza (flu) Vaccine; Dismissal; Table Injury; Cause in Fact; Failure to Prosecute; Vaccine Rule 21(b); Pro Se Petitioner |

*Jermaine A. Hampton, pro se, Waupun, WI, petitioner*
*Emilie Williams, U.S. Department of Justice, Washington, D.C., for respondent*

## DECISION[1]

On December 9, 2019, petitioner, Jermaine Hampton, filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), alleging that he suffered a shoulder injury related to vaccine administration or "SIRVA" resulting from his March 7, 2017 influenza ("flu") vaccination.[2] (ECF No. 1.) For the reasons set forth below, I conclude that petitioner is not entitled to compensation.

### I.   Procedural History

This case was assigned to my docket on December 10, 2019. (ECF No. 7.) Due to petitioner's incarceration, respondent subpoenaed and filed petitioner's complete medical records. (ECF No. 27.) Respondent subsequently filed his Rule 4(c) report on

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

[2] As discussed further below, petitioner's shoulder condition was diagnosed as adhesive capsulitis. He inconsistently asserted in subsequent filings that he suffered other medical conditions that were affected by his adhesive capsulitis. (ECF Nos. 47, 52.)

April 15, 2021.³ (*See* ECF No. 42.) Respondent contends that compensation is not appropriate in this case. (*Id*.)

Following respondent's filing of his Rule 4(c) report, I explained to petitioner the ways in which he could seek to prosecute this case and ordered petitioner to file a status report indicating how he intended to proceed by no later than July 12, 2021.⁴ (ECF No. 44.) Petitioner allowed this deadline to lapse without the required filing, but was *sua sponte* allowed until October 15, 2021 to file his status report. (ECF No. 46.) In my order extending petitioner's deadline, I cautioned that failure to meet his deadlines may result in an order to show cause representing his final opportunity to continue his case, and that failure to respond to such an order would then result in an involuntary dismissal pursuant to Vaccine Rule 21(b). (*Id.*)

On September 7, 2021, petitioner filed a status report indicating that he was scheduled for release from prison on November 16, 2021, and that after his release he intended to secure representation and seek additional medical evidence to support his claim. (ECF No. 47.) Alternatively, he suggested he would voluntarily dismiss his claim in exchange for a specified amount of compensation for attorneys' fees and costs. (*Id*.) I construed petitioner's status report as a motion to stay his case pending his release from prison and ordered respondent to file a response by September 23, 2021. (ECF No. 48.) I stressed the following:

> Petitioner is also advised that he will have a continuing obligation to maintain contact with the court and that any order granting his motion to stay will require petitioner to provide updated contact information where he can be reached following his release from prison. <u>Failure to provide current and accurate contact information will not prevent this case from being involuntarily dismissed should petitioner fail to prosecute</u>.

(*Id.* (emphasis in original).)

---

³ Petitioner moved for a default judgment against the government based on a delay in the government's filing of the Rule 4(c) report. (ECF No. 43.) I denied that motion. (ECF No. 44.)

⁴ Specifically, I explained to petitioner that

> Because respondent has indicated compensation is not appropriate, the respondent's report acts as a response or answer to petitioner's allegation . . . However, the government's interpretation of petitioner's own case is not binding on me and petitioner is entitled to present additional evidence in response and to have me decide this case based on my own review of the evidence. I realize prosecuting this case is likely made far more challenging by petitioner's status as an incarcerated *pro se* petitioner; however, if petitioner remains unable to retain counsel, the obligation to prosecute will still fall to petitioner as a pro se petitioner.

(ECF No. 44, p. 2.) I further explained that, based on his review of the government's defense and the circumstances of the case, petitioner might consider one (or a combination of) the following options: requesting voluntary dismissal; moving for a ruling on the existing record; moving for a fact finding resolving specific issues, renewing his search for representation, filing additional evidence in the form of witness statements or other documents, or seeking an expert opinion. (*Id*. at 3-4.)

Before respondent filed any response to what I had construed as his motion to stay proceedings, petitioner filed, on September 23, 2021, both a motion to voluntarily dismiss his claim and a motion for attorneys' fees and costs. (ECF Nos. 49, 50.) However, on September 24, 2021, I issued an order holding petitioner's motion to voluntarily dismiss in abeyance until October 26, 2021. (ECF No. 51.) I explained that statements within petitioner's motion appeared to suggest that petitioner did not understand that a dismissal would end his rights within the program and therefore held the motion to provide petitioner an opportunity to seek clarification. (*Id.*)

Petitioner filed a response to that order on October 12, 2021. (ECF No. 52.) Petitioner indicated that, especially in light of his upcoming release from prison, "I really just want to be done with this claim." (*Id*. at 2.)  He suggested he initially filed the claim in an attempt to receive better care for his injury. (*Id*.) However, he also reiterated his proposal to dismiss his case in exchange for an award of attorneys' fees and costs and explained that he had written separately to respondent with this offer.[5] (*Id*.) On October 15, 2021, I denied petitioner's motion for attorneys' fees based on petitioner's *pro se* status.[6] (ECF No. 53.) However, in light of petitioner's October 12, 2021 filing, I also issued an order continuing to hold petitioner's motion to voluntarily dismiss in abeyance and ordering respondent to file a status report confirming that he had responded to petitioner's offer of settlement. (ECF No. 54.) Respondent filed his status report on October 20, 2021. (ECF No. 55.)

Subsequently, on October 28, 2021, petitioner filed a motion seeking to withdraw his prior motion for voluntary dismissal and requesting further guidance from the court on how to proceed.[7] (ECF No. 56.) Because petitioner's anticipated release from prison was imminent, I ordered petitioner to file a status report by December 8, 2021, providing updated contact information including a phone number, mailing address, and e-mail address if applicable, so that a status conference could be scheduled.[8] (ECF No. 57.) Petitioner did not respond to that order.

---

[5] In this filing petitioner confirmed he was aware of the need to provide updated contact information. Following his signature, he stated: "P.S. if you agree to the payment of legal fees I ask this court to please mail the check to an address I will provide once this court agrees to payment." (ECF No. 52, p. 3.)

[6] Although petitioner titled his motion as a motion for attorneys' fees and costs, he did not actually identify any costs to be reimbursed.  He had previously filed a motion to proceed *in forma pauperis*, which was granted. (ECF Nos. 2, 10.)  His motion identified only his own hours spent pursuing the claim as the basis for his request. (ECF No. 50.)

[7] Petitioner's filing was actually titled as a "status report" but also indicated that he "hereby moves this court for an order granting this motion to continue this claim."  Accordingly, the document was docketed as a motion to withdraw the prior motion.

[8] Although the order allowed petitioner a filing deadline post-dating his anticipated November 16, 2021 release from Waupun Correctional Institute, the order itself was issued in advance of the anticipated release date on November 8, 2021, and mailed by the clerk of court on November 9, 2021. (ECF No. 57.)

On December 28, 2021, I issued an order to show cause why this case should not be dismissed. (ECF No. 58.) I explained that:

> Since the filing of respondent's rule 4(c) report, petitioner has been inconsistent in indicating whether he wishes to continue pursuing his claim. Petitioner's most recent filing requested guidance from the court on how to proceed; however, petitioner has not subsequently been in contact with the court in any capacity since that filing or since his release from prison. Moreover, petitioner has ignored repeated instructions to provide updated contact information to the court. It has been two months since petitioner's last contact with the court and he has missed a filing deadline in the interim. At this point, it is unclear whether petitioner intends to pursue his claim.

(*Id.* at 3.) I further indicated that "[b]ecause petitioner's release from prison represents a unique and potentially challenging circumstance, I will allow petitioner one final 90-day period to file a status report providing the court with updated contact information sufficient to schedule a status conference in this case . . . If petitioner's status report is not filed by Monday March 28, 2022, this case will be involuntarily DISMISSED."[9] (*Id.* at 4.)

Petitioner did not respond to the order to show cause and did not otherwise have any further contact with the court. It has now been approximately six months since petitioner last had any contact with the court.

## II. Brief Summary of Relevant Medical Facts[10]

On March 10, 2017, three days after receiving his flu vaccination, petitioner submitted a health service request to the Health Services Unit ("HSU") at Waupun

---

[9] A review of the Wisconsin Department of Corrections Offender Locator (available at https://appsdoc.wi.gov/lop/) indicated as of a search conducted December 10, 2021, that petitioner's current address was not available, but that he is under active community supervision with Unit 712 of the Department of Corrections parole office. Accordingly, I instructed the clerk of court to mail a copy of the order to show cause both to petitioner's address as reflected on the court's docket (*i.e.* Waupun Correctional Institute) and to petitioner care of Unit 712 of the Department of Corrections parole office. Of the two copies mailed to petitioner, the copy of the order to show cause mailed to Waupun Correctional Institute was returned to sender. (ECF No. 59.)

[10] Although I have reviewed the entirety of the record, in light of petitioner's failure to prosecute, this fact summary is limited to specific medical record notations regarding onset of petitioner's left shoulder pain that illustrate an issue that is discernable and dispositive on the existing record. Petitioner had a much more extensive medical history inclusive of further treatment of his left shoulder as well as other conditions, such as carpal tunnel syndrome and cervical cord compression, that further complicate his clinical presentation. Some of petitioner's later medical records potentially raise the question of whether petitioner's shoulder pain diagnosed as adhesive capsulitis may actually have been a manifestation of his other condition(s). Petitioner acknowledged in his filings that his spinal condition was not caused by his vaccination but asserted that he also had a separate adhesive capsulitis that was vaccine-caused. (ECF No. 52, pp. 1-2.) For purposes of this decision it is assumed, but not decided, that petitioner did have adhesive capsulitis; however, had petitioner continued to prosecute this case, this and other issues beyond what is discussed in this decision likely would have required further litigation by the parties.

Correctional Institute complaining of left arm pain and flu like symptoms since the time of his vaccination. (Ex. E, p. 38; Ex. C, p. 32.) On examination, petitioner exhibited decreased range of motion and muscle spasms in his left arm, and was treated with ibuprofen, acetaminophen and ice. (*Id.*)

On March 14, 2017, petitioner sent requests to the HSU reporting headache, fatigue, body aches and diarrhea, all of which he attributed to his flu vaccine. (Ex. C, p. 33.) The HSU response was "very unlikely." (*Id.*) Petitioner was seen by the HSU for flu-like symptoms on March 21, March 22 and March 23. (Ex. E, pp. 37-38.)

Petitioner sent requests to the HSU again on March 29, 2017. (Ex. C, p. 27.) He was seen on March 30, 2017, for a headache and left shoulder pain. (Ex. E, p. 34.) A physical examination showed full range of motion of the neck and bilateral upper extremities. (*Id.*) In April of 2017, petitioner continued to complain of muscle pain since his flu shot. (Ex. E, pp. 34-36; Ex. C, p. 9.) On April 24, 2017, petitioner received a diagnosis of adhesive capsulitis in his left shoulder. (Ex. E, p. 33.)

However, petitioner already had ongoing pain and dysfunction of the left shoulder prior to vaccination. Two months prior to vaccination he was seen by an orthopedist for chronic left shoulder pain that was diagnosed as adhesive capsulitis. (Ex E, p. 23.) He was prescribed physical therapy and NSAIDS were recommended. (*Id.*) Left shoulder pain was also previously documented in petitioner's medical records on July 27, 2016.[11] (Ex. E, p. 40.) None of petitioner's treating physicians attributed his shoulder pain to his vaccination.[12]

### I.   Applicable Statutory Scheme and Petitioner's Burden of Proof

Under the National Vaccine Injury Compensation Program, compensation awards are made to individuals who have suffered injuries after receiving vaccines. In general, to gain an award, a petitioner must make a number of factual demonstrations, including showing that an individual received a vaccination covered by the statute; received it in the United States; suffered a serious, long-standing injury; and has received no previous award or settlement on account of the injury. Finally – and the key question in most cases under the Program – the petitioner must also establish a causal link between the vaccination and the injury. In some cases, the petitioner may simply

---

[11] On October 17, 2018, petitioner submitted a request to the prison to have reference to a left arm injury suffered during a fight in 2016 removed from his medical records. (Ex. A, p. 437.) This appears to be a reference to the July 27, 2016 notation. (*Compare* Ex. A, p. 437 ("no fight occurred where I retained any injuries to my left arm") and Ex. E, p. 40 (reporting left shoulder pain and "relates he was struck there by another's fist").) Petitioner contended that he suffered no shoulder injury in 2016 and that some documents in his medical file pertained to a Jerod Hampton. He contended that medical record in question was placed in his record as part of a cover up of his vaccine-related injury. (Ex. A, p. 437.) However, even without resolving the credibility of this complaint, the July 27, 2016 record entry is not the only evidence of pre-vaccination shoulder pain documented in petitioner's medical records. Petitioner's record dispute did not address his January 12, 2017 record. (Ex. E, p. 23.)

[12] Petitioner has asserted in his filings that one of his care providers did tell him his shoulder injury was caused by his vaccination (ECF No. 52, p. 2); however, this is not reflected in the medical records.

demonstrate the occurrence of what has been called a "Table Injury." That is, it may be shown that the vaccine recipient suffered an injury of the type enumerated in the "Vaccine Injury Table," corresponding to the vaccination in question, within an applicable time period following the vaccination also specified in the Table. If so, the Table Injury is presumed to have been caused by the vaccination, and the petitioner is automatically entitled to compensation, unless it is affirmatively shown that the injury was caused by some factor other than the vaccination. § 300aa-13(a)(1)(A); § 300 aa-11(c)(1)(C)(i); § 300aa-14(a); § 300aa-13(a)(1)(B).

As relevant here, the Vaccine Injury Table lists a Shoulder Injury Related to Vaccine Administration or "SIRVA" as a compensable injury if it occurs within 48 hours of administration of an influenza vaccine. § 300aa-14(a) as amended by 42 CFR § 100.3. Table Injury cases are guided by statutory "Qualifications and aids in interpretation" ("QAIs"), which provides more detailed explanation of what should be considered when determining whether a petitioner has actually suffered an injury listed on the Vaccine Injury Table. 42 CFR § 100.3(c). To be considered a "Table SIRVA," petitioner satisfy the following four criteria:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 CFR §100.3(c)(10).

Alternatively, if no injury falling within the Table can be shown, the petitioner may still demonstrate entitlement to an award by showing that the vaccine recipient's injury or death was caused-in-fact by the vaccination in question. § 300aa-13(a)(1)(A); § 300aa-11(c)(1)(C)(ii). To so demonstrate, a petitioner must show that the vaccine was "not only [the] but-for cause of the injury but also a substantial factor in bringing about the injury." *Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1321 (Fed. Cir. 2010) (quoting *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1352–53 (Fed. Cir. 1999)); *Pafford v. Sec'y of Health & Human Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006). In particular, a petitioner must show by preponderant evidence: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of proximate temporal relationship between vaccination and

injury in order to prove causation-in-fact. *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005)

For both Table and Non–Table claims, Vaccine Program petitioners must establish their claim by a "preponderance of the evidence". § 300aa-13(a). That is, a petitioner must present evidence sufficient to show "that the existence of a fact is more probable than its nonexistence . . . ." *Moberly*, 592 at 1322 n.2. Proof of medical certainty is not required. *Bunting v. Sec'y of Health & Human Servs.*, 931 F.2d 867, 873 (Fed. Cir. 1991). However, a petitioner may not receive a Vaccine Program award based solely on his assertions; rather, the petition must be supported by either medical records or by the opinion of a competent physician. § 300aa-13(a)(1).

## II.   Petitioner's Medical Records Do Not Preponderantly Support his Claim

With respect to the presence of any Table Injury, petitioner's medical records are inadequate to distinguish petitioner's post-vaccination left shoulder pain complaints from his prior, chronic left shoulder pain within the same shoulder documented as recently as two months prior to the vaccination at issue. Importantly, petitioner's left shoulder pain carried the same adhesive capsulitis diagnosis pre- and post-vaccination. Accordingly, without more, petitioner fails the first SIRVA criterion which requires "[n]o history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection." 42 CFR §100.3(c)(10).

To the extent petitioner declares he suffered new shoulder pain caused by his vaccination,[13] the Vaccine Act itself forbids a special master from ruling in petitioner's favor based solely on his or her assertions; rather, the petition must be supported by either medical records or by the opinion of a competent physician. 42 U.S.C. § 300aa-13(a)(1). In this case, petitioner's medical records filed to date do not include any medical opinion sufficient to distinguish the pre- and post-vaccination shoulder complaints documented in the medical records or to otherwise support vaccine causation (or significant aggravation) under the above-described burden of proof for causation-in-fact.

For these reasons, there is not preponderant evidence on the current record that petitioner has suffered either a Table SIRVA or any shoulder injury caused-in-fact by his vaccination. Accordingly, petitioner has not demonstrated that he is entitled to compensation.

## III.   Failure to Prosecute

Special Masters are meant to provide the parties a "full and fair *opportunity*" to present their respective cases. *See* Vaccine Rule 3(b)(2)(emphasis added); *see also*

---

[13] In his written statement filed with his petition, petitioner asserts that his only health complaints prior to vaccination were gunshot wounds and a jaw injury, both previously resolved. (ECF No. 1-1, p. 3.)

*Kreizenbeck v. Sec'y of Health & Human Servs.*, 945 F.3d 1362, 1365-66 (Fed. Cir. 2020). Pursuant to Vaccine Rule 8(a), the special master "will determine the format for taking evidence and hearing argument based on the specific circumstances of each case and after consultation with the parties." Vaccine Rule 8(d) expressly authorizes the special master to decide a case based on the written record without holding an evidentiary hearing. Additionally, Vaccine Rule 21(b)(1) provides that "[t]he special master or the court may dismiss a petition or any claim therein for failure of the petitioner to prosecute or comply with these rules or any order of the special master or the court."

Petitioner has been provided a full and fair opportunity to develop the record. Despite multiple orders allowing petitioner time to consider how to proceed, petitioner has not taken any steps to substantively prosecute this case since the filing of respondent's Rule 4(c) report approximately one year ago. Moreover, he has repeatedly failed to respond to the undersigned's orders, has failed to maintain contact with the court, and has been inconsistent within his filings in expressing whether he actually wished to continue his claim. Despite being forewarned regarding the need to provide updated contact information following his release from prison, petitioner has not done so and has not had contact with the court for approximately six months. Accordingly, it is reasonable and appropriate to resolve this case on the existing record. Moreover, petitioner's conduct constitutes a failure to prosecute pursuant to Vaccine Rule 21(b) that forms a separate basis for dismissal.

### IV. Petitioner's Motion to Stay, Motion to Dismiss, and Motion to Withdraw his Motion to Dismiss

On September 7, 2021, petitioner filed a status report that I construed as a motion to stay this case until petitioner's prison release date (November 16, 2021). (ECF Nos. 47-48.) On September 23, 2021, petitioner filed a motion seeking to voluntarily dismiss his claim. (ECF No. 49.) On October 28, 2021, petitioner filed a motion seeking to withdraw his motion to dismiss and continue the case. (ECF No. 56.) Respondent did not respond to any of these motions. Petitioner's motion to dismiss was initially held in abeyance so that petitioner could have an opportunity to seek further guidance regarding how to proceed. However, in light of petitioner's subsequent failure to prosecute, all of these motions are deemed MOOT.

### V. Conclusion

In light of all of the above, petitioner is not entitled to compensation. Therefore, this case is DISMISSED both for insufficient proof and for failure to prosecute. In the absence of a timely-filed motion for review of this Decision, the Clerk of the Court shall enter judgment accordingly.[14]

---

[14] As explained above, petitioner has not provided updated contact information since his release from prison; however, a review of the Wisconsin Department of Corrections Offender Locator indicates as of the date of this decision that he is still under active community supervision with Unit 712 of the Department of Corrections parole office. Accordingly, **the clerk is hereby directed to mail a copy of**

8

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

this decision to both petitioner's last known address at Waupun Correctional Institute as indicated on the docket of this case and: Jermaine A. Hampton (No. 406289), c/o Unit 712 parole office, 3422 Wilgus Avenue, Sheboygan, WI 53081.

9