# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1857V
Filed: April 22, 2024

| |
|---|
| JERMAINE A. HAMPTON, |
| Petitioner, |
| v. |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |
| Respondent. |

*Jermaine A. Hampton*, pro se, Sheboygan, WI, petitioner.
*Emilie Williams*, U.S. Department of Justice, Washington, D.C., for respondent.

### ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT[1]

On December 9, 2019, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa, *et seq.* (2012), alleging that he suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") following receipt of an influenza ("flu") vaccination on March 7, 2017.  (ECF No. 1.)  Judgement entered dismissing the petition on May 17, 2022.  (ECF No. 63.)  Petitioner subsequently filed a motion seeking relief from that judgment on February 22, 2024.  (ECF Nos. 65-66.)  For the reasons discussed below, petitioner's motion is **DENIED**.

### I. Procedural History

Petitioner filed this action as a *pro se* litigant and remained a *pro se* litigant throughout the duration of the case.  At the time of filing, he was incarcerated at Waupun Correctional Institution and alleged that his injury occurred as a result of a vaccine administered during his incarceration.  Petitioner filed a motion to proceed *in*

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the document will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

*forma pauperis*, which was granted.  (ECF Nos. 2, 10.)  Because petitioner was unable to secure and file complete medical records on his own, respondent at my direction obtained his records by subpoena and filed them as Exhibits A-H.  (ECF Nos. 22, 27.)

Respondent filed his Rule 4 Report on April 15, 2021.  (ECF No. 42.)  Based on his review of the petition and medical records, respondent asserted that petitioner could not meet the standard for establishing a Table Injury of SIRVA (which would have a presumption of vaccine-causation) because he had preexisting adhesive capsulitis, his alleged injury was not limited to his shoulder, and his symptoms were otherwise explained by cervical spinal stenosis with cord compression.  (*Id*. at 11-12.)  Alternatively, the medical records did not include any medical opinion that would support causation-in-fact.  (*Id*.)

Following the filing of respondent's report, I issued a lengthy order on May 12, 2021, explaining petitioner's options with respect to how to proceed.  (ECF No. 44.)  I advised petitioner that he could, as appropriate, move for dismissal, a ruling on the existing record, or any relevant findings of fact.  (*Id*. at 3.)  Alternatively, I noted that I would permit petitioner time to seek counsel or to seek additional evidence, including an expert report.  (*Id*. at 3-4.)  I noted that these options were not mutually exclusive and directed petitioner to file a status report indicating how he would proceed.  (*Id*. at 4.)

Petitioner did not respond to my order, and I issued a follow-up order indicating that, "[g]iven how difficult this case will be to prosecute and petitioner's inaction, it is unclear whether petitioner intend to continue his claim."  (ECF No. 46.)  I attached courtesy copies of respondent's report and the May 12, 2021 Order and provided petitioner an additional opportunity to respond.  I noted that if no filing was made, I would issue an Order to Show Cause, which would be petitioner's final opportunity to avoid involuntary dismissal.  (*Id*.)

Thereafter, on September 7, 2021, petitioner filed a status report in response to my order.  (ECF No. 47.)  In the status report, petitioner maintained his allegations and explained that "Petitioner is scheduled for release on Nov. 16th 2021 and he intends to get a complete and accurate cause of his other medical issues as to dispute or provide objective evidence that would support a finding in my favor."  (*Id*.)  Alternatively, petitioner made an offer of settlement whereby he would agree to dismiss his case in exchange for an award of attorneys' fees and costs.  (*Id*.)

Following petitioner's filing, I issued a Scheduling Order on September 9, 2021.  (ECF No. 48.)  I advised that "I am construing petitioner's status report as a motion to stay the case pending his release from prison."  (*Id*.)  I ordered respondent to file a response to the motion and cautioned petitioner as follows:

> Petitioner is also advised that he will have a continuing obligation to maintain contact with the court and that any order granting his motion to stay will require petitioner to provide updated contact information where he can be reached following his release from prison.  Failure to provide current

and accurate contact information will not prevent this case from being involuntarily dismissed should petitioner fail to prosecute.

(*Id*. (emphasis omitted).)

Subsequently, on September 23, 2021, petitioner filed two motions, a motion to voluntarily dismiss and a motion for attorneys' fees and costs. (ECF Nos. 49-50.) I denied petitioner's motion for attorneys' fees and costs (ECF No. 53) and held the motion to dismiss in abeyance because petitioner appeared not to understand that his motion to dismiss would end all of his rights in the Program (ECF No. 51). I allowed petitioner time to determine if he wished to withdraw the motion to dismiss and indicated I would grant the motion absent a response to the order within 30 days. (*Id*. at 2.)

Petitioner filed a motion to withdraw his motion to dismiss on October 28, 2021. (ECF No. 56.) In the motion, he sought further guidance with respect to how to proceed. (*Id*.) I then issued a follow-up order on November 8, 2021. (ECF No. 57.) I explained that "I am aware that petitioner will be released from prison on November 16, 2021 and will therefore no longer be receiving communications at the address provided to the court." I ordered petitioner to file a status report in 30 days providing updated contact information, including a telephone number, mailing address, and if appropriate, an e-mail address, and I advised that a telephonic status conference would be scheduled. (*Id*.) As discussed further below, petitioner now indicates that he did not receive a copy of this order at the time it was issued. (ECF No. 65, p. 2; ECF No. 66, p. 5.)

Receiving no response from petitioner, I issued an Order to Show Cause why the case should not be involuntarily dismissed. (ECF No. 58.) Petitioner was advised that the show cause deadline was his last opportunity to avoid involuntary dismissal. (*Id*. at 4.) In order to avoid dismissal, petitioner was ordered to file a status report providing sufficient contact information to schedule a status conference. (*Id*.) The Order to Show Cause was mailed to petitioner both at his docketed address at Waupun Correctional Institute, as well as to his parole office, which was located on the court's own initiative. The copy mailed to Waupun Correctional Institution was returned to sender. (ECF No. 59.) In the instant motion, petitioner represents he did not receive a copy of the Order to Show Cause from his parole officer until February 5, 2024. (ECF No. 65, p. 2.)

Receiving no response to the Order to Show Cause, and after more than five months of no contact from petitioner, I issued a decision dismissing this case on April 14, 2022. (ECF No. 60; *see also Hampton v. Sec'y of Health & Human Servs*., No. 19-1857V, 2022 WL 1467654 (Fed. Cl. Spec. Mstr. Apr. 14, 2022).) The case was dismissed both for failure to prosecute and for insufficient proof based on the existing record. (ECF No. 60, pp. 7-8.) In the decision, I found that in light of petitioner's failure to prosecute, his prior motions to stay, to dismiss, and to withdraw his dismissal motion, were all moot. (*Id.* at 8.) With regard to the merits, I found based on my review of the medical records that petitioner's preexisting adhesive capsulitis defeated his claim. (*Id.*

3

at 7.) Because that issue was dispositive, and because petitioner had failed to prosecute, I did not reach the further question of whether petitioner's alleged symptoms were instead caused by his cervical spinal issue, as respondent had additionally argued. (*Id.* at n. 10.)

As with the Order to Show Cause, the decision was mailed to petitioner at both Waupun Correctional Institution as per the docket as well as to his parole office. The copy mailed to Waupun was returned to sender, and petitioner represents in the instant motion that he did not receive the copy sent to his parole office until February 5, 2024. (ECF No. 65, pp. 1-2.) Judgment entered on May 17, 2022, and the judgment was mailed to petitioner in the same manner. (ECF No. 63.) Petitioner represents that he did not become aware of the judgment dismissing the case until February of 2024. (ECF No. 65, pp. 1-2; ECF No. 66, p. 5.)

Approximately 20 months after judgment entered, the court received four documents from petitioner between February 21, 2024 and February 22, 2024. These documents explain that petitioner was homeless following his release from prison, that he has recently been incarcerated again, and that he only recently became aware of the dismissal of his case. Three of the documents were accepted by my leave as a motion for relief from judgment and supporting documents. These were docketed at ECF No. 65. A fourth document was filed as a supplement to that motion and was docketed at ECF No. 66. These documents will be addressed collectively by this decision as one motion.

In my order accepting petitioner's filings by my leave, I ordered respondent to file a response to petitioner's motion by March 8, 2024, and ordered petitioner to then file a reply by April 5, 2024. (ECF No. 64.) Respondent filed his response on March 8, 2024. (ECF No. 67.) Petitioner submitted a reply that was ultimately received by the court on April 10, 2024. (ECF No. 68.) Accordingly, petitioner's motion is now ripe for resolution.

## II.     Party Contentions

### a. Petitioner's Initial Motion

Throughout his initial motion papers, petitioner raises several circumstances that he contends favor a reopening of judgment. First, petitioner asserts that he had filed a motion to stay proceedings to allow for time to seek guidance regarding litigation of his claim after his release from prison, which occurred on November 16, 2021. (ECF No. 65, p. 1.) Second, during the relevant period in which this case was dismissed, petitioner was "homeless without any available assistance to help him to litigate this claim." (*Id.*) In that regard, petitioner indicates "[i]n the month of December the petitioner called and spoke with the clerk and requested that all documents and information be sent to his Email address as he had no actual address to receive

4

physical mail."[2]  (*Id*.)  Third, petitioner did not find out about the dismissal of this case until February 5, 2024.  (*Id*. at 1-2.)  On this point, petitioner asserts that his parole officer did not forward any mail to him, including several of this court's orders until that date.  (*Id*. at 2.)  In his supplemental submission, petitioner more specifically asserts that he did not receive the undersigned's orders of November 9, 2021 or December 9, 2021, or the judgment dated April of 2022.[3]  (ECF No. 66, p. 5.)

Petitioner additionally asserts that he can, if permitted, prove that he suffered a vaccine-caused injury.  (ECF No. 65, p. 2; ECF No. 66, p. 1.)  Petitioner asserts that false information was added to his medical records in order to sabotage his claim. (ECF No. 66, p. 1.)  He also asserts that his current treating physician will support his claim. (ECF No. 65-2, p. 2.)  Petitioner attaches several medical records to his motion. Specifically:

- A medical record from the Wisconsin Department of Corrections for an encounter of November 27, 2018.  (ECF No. 66, p. 10.)  At that time petitioner was seen for both his cervical neck issues as well as adhesive capsulitis he attributed to his flu vaccination.  (*Id*.)  This record contains no medical opinion regarding his adhesive capsulitis.  (*Id*.)

- A request for an off-site MRI of petitioner's cervical spine dated February 3, 2020. (ECF No. 66, p. 11.)

- A medical record from the University of Wisconsin Hospital neurosurgery department for an encounter of August 14, 2020.  (ECF No. 66, pp. 12-13.) Petitioner reports having a history of a "bad reaction" to a vaccine that resulted in inflammation of his shoulder joint.  (*Id*. at 12.)  This record contains no medical opinion regarding petitioner's shoulder or his reported vaccine reaction.

---

[2] Petitioner does not indicate in what year he pursued this contact.  He was released from Waupun Correctional Institution in November of 2021 and did not file the instant motion until February of 2024. Accordingly, the reference to December could refer to 2021, 2022, or 2023.  It should also be noted that petitioner's reference to "the clerk" is ambiguous.  Although petitioner may have spoken to someone in the office of the Clerk of Court, there was no contact made to the clerks of my own chambers.  In either event, petitioner conspicuously does not indicate what the person he spoke to advised.  None of this is to doubt that the call occurred; however, without more, this representation regarding an isolated phone call to an unknown person to unknown effect occurring sometime during the last three calendar years is not strong evidence of diligence on petitioner's part.

[3] Petitioner's descriptions do not exactly match what was issued in this case.  However, it is reasonable to conclude that petitioner is referring to the undersigned's Order issued November 8, 2021 (ECF No. 57), Order to Show Cause issued December 28, 2021 (ECF No. 58), and Decision issued April 14, 2022 (ECF No. 60).  These are the only documents issued in the case during the months referenced by petitioner.  To the extent petitioner references the judgment issued in the case, that occurred on May 17, 2022.  (ECF No. 63.)

5

In pertinent part, petitioner cites Rules 59 and 60 of the Rules of the Court of Federal Claims ("RCFC") as permitting the undersigned to grant him relief from judgment.[4]  In sum, he argues as follows:

> Petitioner asserts that this circumstance is extraordinary and that his inability to access the Court was not of his own doing but of not being notified of [illegible[5]] orders . . . . Petitioner also asserts that he intended to gather more information concerning his medical history and diagnosis as he believed that the prison was somehow altering his records and adding information which can be attributed to another inmate as well as to track down the offsite providers who treated the petitioner which would contradict the dates provided by the institution in the petitioner's medical records and would support that the petitioner did so suffer a shoulder related injury which was caused only by the vaccine.

(ECF No. 66, pp. 5-6.)

### b.  Respondent's Response

In his response, respondent requests that petitioner's motion be denied. (ECF No. 67.)  As a threshold matter, respondent notes that only petitioner's claim with respect to RCFC 60(b)(6) potentially remains timely.  (*Id*. at n. 2.)  However, he explains that subsection (6) of Rule 60 requires extraordinary circumstances such that a "grave miscarriage of justice" would result absent relief.  (*Id*. at 3 (quoting *Kenzora v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 588, 596 (2016)).)  Respondent stresses that granting relief under RCFC 60(b) "should be the exception, not the rule." (*Id*. (quoting *Vessels v. Sec'y of Health & Human Servs*., 65 Fed. Cl. 563, 568 (2005)).)

Even without the specific one-year limitation applicable to RCFC 60 subsections (1)-(3), respondent argues that petitioner did not file his motion within a reasonable time following the entry of judgment as required by RCFC 60(b)(c).  (ECF No. 67, p. 4.)  Although petitioner asserts he was unaware of the dismissal of his case, respondent stresses that RCFC 60(b)(6) does not relieve a party of a "free, calculated, and deliberate choice."  (*Id*. (quoting *Kennedy v Sec'y of Health & Human Servs*., 99 Fed. Cl. 535, 548 (2011), *aff'd per curiam*, 485 F. App'x 435 (Fed. Cir. 2012)).)  Respondent asserts that petitioner knowingly failed to notify the court of his appropriate contact information despite the court's order to do so.  (*Id*.)  Respondent acknowledges that

---

[4] Actually, petitioner cites the Federal Rules of Civil Procedure ("FRCP"), which do not apply in this case; however, I construe petitioner as having invoked Rules 59 and 60 of the Rules of the Court of Federal Claims, which are substantially similar and govern the same relief within this court.  Vaccine Rule 36 provides a vehicle for vaccine petitioners to access RCFC 59 and 60.  Petitioner also cites various subsections of FRCP 6 as well as 28 U.S.C. § 1655 and the Soldiers and Sailors Civil Relief Act of 1940.  Although I have considered these additional citations, I cannot discern how they are relevant or helpful to petitioner's position.

[5] Petitioner's motion papers are handwritten.

petitioner's circumstances were "undoubtedly significant personal hardships," but contends that they do not represent the extraordinary circumstances required to obtain relief under RCFC 60(b)(6).  (*Id*. at 4-5.)  Respondent argues that petitioner is merely seeking an opportunity to relitigate a claim that has already been found to be without merit.  (*Id*. at 5.)

### c. Petitioner's Reply

In his reply, petitioner focuses on RCFC 60(b)(6), which he characterizes as a "catchall provision" permitting relief from judgment "for any other reason that justifies relief."  (ECF No. 68, pp. 3-4.)  Citing *Checo v. Shinseki*, 748 F.3d 1373 (Fed. Cir. 2014), and several other cases, petitioner argues that his circumstances qualify for a "stop clock" approach to equitable tolling whereby his obligations remained tolled for the duration of his qualifying period of extraordinary circumstances.  (*Id*. at 6-7.)  He indicates that his homelessness "directly affected his ability to communicate with the court and is a[n] extraordinary circumstance."  (*Id*. at 7.)  Citing *National Credit Union Administration Board v. Gray*, 1 F.3d 262, 266 (4th Cir. 1993), petitioner argues that extraordinary circumstances exist "when proceedings may have taken place without the knowledge of the 'losing party' and through no fault of that party."  (*Id*. at 9.)  Throughout his reply, petitioner extensively discusses the standard for relief under RCFC 60(b)(6), citing numerous cases.

> Petitioner argues:
>
> Petitioner's allegations set up an extraordinary situation which cannot fairly or logically be classified as mere "negl[igence]" on his part. . . . The basis of his petition was not that he had neglected to act in his own defense, but that he never received notices from the court concerning the state of his claim, and that while in prison he was indigent and without a lawyer or the funds to hire one, and once released he was homeless and unable to defend himself against the dismissal of his claim because he had never received notice of the state of his claim before nor after he left prison.

(*Id*. at 13-14.)

Petitioner's reply also includes several specific arguments responding to various points in my prior orders and decision, as well as points raised in respondent's response to his motion.  First, petitioner is critical of respondent's response for relying on the content of court orders that he did not receive.  (ECF No. 68, p. 5.)  Further, petitioner stresses that, because the undersigned's order of November 8, 2021 was not mailed until November 9th, it would not realistically have made it to petitioner prior to his release on November 16th, given that the prison did not process mail on the weekend.[6]  (*Id*.)

---

[6] Petitioner's explanation is premised on his understanding that November 11, 2021, was a Friday.  (ECF No. 68, p. 5.)  However, November 11, 2021, was a Thursday.  Accordingly, it is not clear if petitioner's description of the prison's mail processing actually does explain why he didn't receive the November 8, 2021 order.  But, in any event, nothing in the analysis below turns on that specific detail.

7

Petitioner also reiterates that his motion included medical reports that he asserts prove he experienced vaccine-caused adhesive capsulitis.  (*Id*. at 8, 14-15.)  Petitioner asserts it is "false" for respondent to assert that he had a full and fair opportunity to litigate his case, indicating that he was indigent during his incarceration and did not have access to his medical file in order to dispute false information in the medical records.  (*Id*. at 10.)  Petitioner believes respondent knowingly withheld evidence and only presented records that would support a denial of compensation.[7]  (*Id*. at 10.)  Accordingly, petitioner disputes the case was decided on the merits.[8]  (*Id*. at 10-11.)  Petitioner also sets out other disagreements with respondent's characterization of the procedural history and dismissal of this case.

### III.   Legal Standard

Vaccine Rule 36 allows parties in this program to seek relief from judgment via RCFC 59 and 60.  *See* Vaccine Rule 36(a).  Because this case has never been assigned to a judge for review, any motion pursuant to Vaccine Rule 36 is directed to the special master.  *See* Vaccine Rule 36(a)(2).  The special master must file a written ruling on the motion that may then be subject to a motion for review.[9]  *See* Vaccine Rule 36(b).

RCFC 60(b) sets forth six circumstances under which the court may relieve a party from a final judgment or order.  Specifically:

(1) Mistake, inadvertence, surprise, or excusable neglect;

(2) Newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b);

(3) Fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

---

[7] To be clear, there is no evidence that respondent withheld any evidence from the court, either knowingly or otherwise.  Because petitioner was unable to secure his own medical files due to his status as being an incarcerated and indigent individual, I directed and authorized respondent to subpoena petitioner's files from the prison.  (ECF Nos. 18, 22.)  Respondent complied by filing records marked as Exhibits A-H.  Respondent otherwise would not in the ordinary course have any role in filing evidence on petitioner's behalf.  Petitioner's only stated reason for asserting respondent withheld evidence is his disagreement with the undersigned's analysis within the dismissal decision.

[8] Petitioner appears to be arguing that the decision was not "on the merits," because he disagrees that the decision accounted for all of the evidence and disagrees that he was given a full and fair opportunity to present his case.  The dismissal decision explicitly did reach the merits with respect to the one issue that was found to be dispositive.

[9] A motion for review is a procedure through which a party may challenge a special master's decision before a judge of the U.S. Court of Federal Claims.  Procedures and requirements for a motion for review are set forth in Vaccine Rules 23-28.  A motion for review must be accompanied by a memorandum of objections and must filed within 30 days of issuance of the decision to be reviewed.  No motions for extension of time are permitted.  *See* Vaccine Rule 36(b)(3) *and* Vaccine Rules 23(b).

>   (4) The judgment is void;
>
>   (5) The judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
>   (6) Any other reason that justifies relief.

The Federal Circuit has indicated that RCFC 60(b) is a remedial provision that must therefore be liberally construed.  *Patton v. Sec'y of Health & Human Servs.*, 25 F.3d 1021, 1030 (Fed. Cir. 1994).  However, because judgments are intended to be final, relief under RCFC 60(b) requires "extraordinary circumstances," *Kenzora v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 588, 595-96 (2016), and "should be used sparingly," *G.G.M. ex rel. Mora v. Sec'y of Health & Human Servs.*, No. 13-421V, 2015 WL 1275389, at *2 (Fed. Cl. Spec. Mstr. Feb. 27, 2015), *motion for review denied*, 122 Fed Cl. 199 (2015), *aff'd*, 673 F. App'x 991 (Fed Cir. 2016).  The balancing of these considerations is generally a discretionary determination.  *DiMasi v. Sec'y of Health & Human Servs.*, No. 2022-1854, 2023 WL 4697122, at *7 (Fed. Cir. July 24, 2023).

RCFC 60(c) further requires that any motion pursuant to RCFC 60(b) must be made "within a reasonable time" and more specifically, for subsections (1) through (3), "no more than a year after the entry of the judgment."  Subsection (6), which is not subject to this one-year limitation, is the broadest grant of authority to provide relief in order to achieve justice; however, it "may be successfully invoked 'only when Rules 60(b)(1) through (b)(5) are inapplicable.'"  *DiMasi*, 2023 WL 4697122, at *8 (quoting *Kemp v. United States*, 596 U.S. 528, 533 (2022)); *see also JGB Enterprises, Inc. v. United States*, 71 Fed. Cl. 468, 472-73 (2006) (explaining that "plaintiff's allegations cannot support the simultaneous pursuit of relief under RCFC 60(b)(1) and (b)(6) because the provisions are mutually exclusive and because plaintiff's entire amended motion is properly construed as seeking relief for 'excusable neglect'").  Application of RCFC 60(b)(6) is only appropriate where extraordinary circumstances are present and substantial rights of a party would be violated absent relief.  *Kollasch ex rel. Q.K. v. Sec'y of Health & Human Servs.*, No. 10-717V, 2021 WL 1728714, at *4 (Fed. Cl. Spec. Mstr. Apr. 6, 2021) (citing *Freeman v. Sec'y of Health & Human Servs.*, 35 Fed. Cl. 280, 281 (1996)); *Coleman v. Sec'y of Health & Human Servs.*, No. 06-0710V, 2011 WL 6828475, at *4 (Fed. Cl. Spec. Mstr. Dec. 7, 2011)).  A substantial right of a petitioner may be harmed where the petitioner has been deprived of a full and fair opportunity to be heard on the merits.  *Kollasch*, 2021 WL 1728714, at *4.

Under RCFC 59, the court may grant a new trial or motion for reconsideration and may reopen judgment to facilitate necessary additional proceedings.  RCFC 59 permits the court in its discretion to grant a party's motion where there has been an

intervening change in controlling law, newly discovered evidence, or a clear factual or legal error the correction of which would prevent manifest injustice.  *Nyan v. United States*, 154 Fed. Cl. 463, 466 (2021) (citing *Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016)).  Motions for reconsideration under RCFC 59 are subject to a "rigorous" standard, under which the moving party must demonstrate "extraordinary circumstances which justify relief."  *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999), *aff'd*, 250 F.3d 762 (Fed. Cir. 2000)).  Reconsideration is not intended to permit a party to reassert arguments that have already been considered.  *Nyan*, 154 Fed. Cl. at 466.  Relief under Rule 59 generally requires action within 28 days of judgment; however, subsection (b)(2) allows that a motion for a new trial or for reconsideration may be filed up to two years after final disposition of a suit if the basis of the motion is a "showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States."  Otherwise, as delineated above, RCFC 60(b)(2) allows for reopening of judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b)."

## IV.    Discussion

### a. Many of Petitioner's Arguments are Untimely

#### i. RCFC 59

Petitioner asserts that reconsideration is appropriate based on RCFC 59.  Reconsideration under Rule 59 may be granted to prevent manifest injustice; however, as explained above, application of this rule generally requires action within 28 days of judgment.  Petitioner has not filed his motion within 28 days of judgment.  RCFC 60(b)(2) separately provides that a motion pursuant to RCFC 59 may be filed beyond this 28-day period in the case of newly discovered evidence; however, that provision is itself subject to a one-year limitation under RCFC 60(c).  Petitioner also did not file his motion within one year of the entry of judgment.  In instances of fraud against the United States, a motion pursuant to RCFC 59 may be filed up to two years from final disposition, but petitioner asserts fraud against himself, not the United States.  Accordingly, petitioner cannot seek relief pursuant to RCFC 59.

#### ii. RCFC 60(b)(1)-(3)

At various points in his motion papers, petitioner references reasons, such as his homelessness and the failure of his parole officer to forward his mail, for why his inaction should be excused.  He asserts that he has only recently become aware of new evidence insofar as he has sought medical follow-up.  And he asserts that prison officials committed fraud by changing his medical records.  These allegations seek to touch on each of the first three bases for relief from judgment under RCFC 60(b).  However, as explained above, RCFC 60(c) requires that any motion pursuant to RCFC

60(b) must be made "within a reasonable time" and more specifically, for subsections (1) through (3), "no more than a year after the entry of the judgment." While application of RCFC 60(b) generally involves a discretionary balancing of factors, "the one year limitation imposed on motions brought under subsections (1), (2), and (3) of the Rule is considered 'an absolute bar to motions filed after that period.'" *Freeman*, 35 Fed Cl. at 283 (quoting *United States v. Berenguer*, 821 F.2d 19, 21 (1st Cir. 1987)). Petitioner filed the instant motion more than one year after judgment entered. Accordingly, petitioner cannot seek relief under RCFC 60(b)(1)-(3).

### b. Even if timely, petitioner's allegations of fraud and newly available evidence do not support relief under RCFC 60(b)(2)-(3) or RCFC 59

Setting the timeliness issue aside, it should also be noted that petitioner's allegation regarding amendment to his medical records is unsupported. Petitioner's motion does not identify any piece of evidence, newfound or otherwise, that demonstrates his medical records were altered. He only offers his assertion that alterations would explain the aspects of his medical records that contradict his claim. However, this is not a new assertion. This allegation was reflected in the records that were filed in this case. The issue was accounted for in the decision dismissing his case, but did not explain all of the relevant notations. (ECF No. 60, n. 11.) And, in any event, even if petitioner did substantiate that prison officials altered his prior medical records, he has not provided any evidence that would support fraud *by the respondent* in this case, leaving RCFC 60(b)(3) entirely inapplicable.[10]

To the extent petitioner has suggested that he intends to seek additional medical follow up that would refute his prior medical records, this is not reasonably possible. No medical exam conducted now could discern the onset of a years-long course of adhesive capsulitis to the degree of precision petitioner would need to establish that his adhesive capsulitis arose shortly after, but not several months before, his vaccination. Any medical opinion rendered at this late date would effectively amount to acceptance of the history of post-vaccination onset provided by petitioner, which would be unlikely to outweigh the contemporaneous medical records.[11] The dismissal decision had

---

[10] In his reply, petitioner argues that he did not have access to his own files in order to dispute any factual inaccuracies. (ECF No. 66, p. 10.) While it is true that respondent, rather than petitioner, filed the complete records into evidence in this case, petitioner offers at best an incomplete explanation of the circumstances. Petitioner did file some records with his petition. (ECF No. 1-2.) Moreover, as explained in the dismissal decision, the records in evidence reflect that petitioner did request that prison officials remove information relating to a specific incident from his medical records, contending it related to a different prison with the same surname. (Ex. A, p. 437.) Thus, without minimizing the challenges of litigating a case as an incarcerated individual, the record of the case confirms that petitioner was reviewing and disputing the contents of his records to at least some degree during his incarceration. As previously explained, petitioner's assertion that respondent withheld evidence in this case has no apparent factual basis. (ECF No. 66, p. 10; *see supra* note 7.)

[11] "[F]or many medical symptoms or events – such as a headache or other pain, dizziness, nausea, vomiting – the patient's or a parent's testimony may be the best, or only, direct evidence of their occurrence. Medical records related to those symptoms would likely be based on the statements of those

concluded that the contemporaneous medical records were inadequate to distinguish petitioner's pre- and post-vaccination symptoms, which were diagnosed as adhesive capsulitis in both instances. (ECF No. 60, p. 7.) In any event, petitioner has not established that seeking medical follow up at this point would constitute uncovering "[n]ewly discovered evidence that, with reasonable diligence, could not have been discovered" up to this point.

The records petitioner has attached to his motion do not call into question the prior adjudication of his case. Petitioner cites the fact that these records state that petitioner's adhesive capsulitis was related to his vaccination. (ECF No. 65-2, pp. 1-2.) However, the notations he references are all within the "subjective" or history portion of the record, meaning the physicians merely recorded what petitioner reported was his history. None of the resulting assessments contain any medical opinion that would support his allegations. Petitioner represents in his motion that his current provider is willing to write a statement that his cervical spinal condition is separate from his shoulder condition (*Id.* at 2), but the decision dismissing this case concluded that the pre-vaccination onset of his alleged adhesive capsulitis was itself incompatible with vaccine-causation, rather than turning on whether petitioner's shoulder symptoms were otherwise due to his cervical spinal condition (ECF No. 60, n. 10).

Accordingly, even if timely, petitioner's arguments with respect to RCFC 60(b)(2)-(3) and RCFC 59 would be without merit. An overarching theme of petitioner's arguments on these points is that it was not realistic to expect him to be able to challenge respondent's position while indigent and especially while he was incarcerated. However, as discussed further below, it must be stressed that the state of the record at the time of dismissal was a direct consequence of petitioner's own failure to prosecute rather than any limitations of his incarceration. Had he maintained contact with the court, petitioner could have continued prosecuting his case following his

---

who experienced them." *James-Cornelius ex rel. E.J. v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed Cir. 1993). Thus, more remote histories of present illness in conflict with contemporaneous medical records are generally given less weight than the earlier records. *E.g.*, *Anderson v. Sec'y of Health & Human Servs.*, No. 20-195V, 2022 WL 17484352, at *10 (Fed. Cl. Spec. Mstr. Nov. 10, 2022) (observing that "[g]iven petitioner's earlier vaccination and treatment records, the more remote history she provided the orthopedist is entitled to less weight."); *see also R.K. v. Sec'y of Health & Human Servs.*, No. 03-632V, 2015 WL 10936124, at *76 (Fed. Cl. Spec. Mstr. Sept. 28, 2015) (holding that more remote histories of illness do not have sufficient indicia of reliability to be credited over conflicting contemporaneous medical records and earlier reported histories), *motion for review denied*, 125 Fed. Cl. 57 (2016), *aff'd*, 671 F. App'x 792 (Fed. Cir. 2016); *Vergara v. Sec'y of Health & Human Servs.*, No. 08-882V, 2014 WL 2795491, at *4 (Fed. Cl. Spec. Mstr. May 15, 2014) ("Special Masters frequently accord more weight to contemporaneously-recorded medical symptoms than those *recorded in later medical histories*, affidavits, or trial testimony." (emphasis added)).

release from prison. In fact, the decision ultimately dismissing this case was not issued until five months after his release.

### c. Neither Excusable Neglect Nor Extraordinary Circumstances Are Present to Support Relief Pursuant to Either RCFC60(b)(1) or (6)

The crux of petitioner's motion is his assertion that his particular circumstances following release from Waupun Correctional Institution either justify excusable neglect under RCFC 60(b)(1) or extraordinary circumstances under RCFC 60(b)(6). Because his claim under subsection (1) is time-barred, the application of RCFC 60(b)(6) is dispositive. Subsection (6) is not subject to the specific one-year time limit for subsections (1) through (3) and it is considered a "grand reservoir" of equitable power. *M.D. ex rel. Dilascio v. Sec'y of Health & Human Servs.*, 153 Fed. Cl. 544, 559 (2021) (quoting *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 714 F.3d 1289, 1295 (Fed. Cir. 2013)). However, it requires a demonstration of "extraordinary circumstances" that go beyond the more commonplace occurrences addressed by the other subsections of Rule 60. *E.g.*, *DiMasi*, 2023 WL 4697122, at *8 (explaining that subsection (6) is available only if subsections (1) through (5) are inapplicable).)

I previously recognized in my order to show cause that "petitioner's release from prison represents a unique and potentially challenging circumstance."[12] (ECF No. 58, p. 4.) In that respect, petitioner had, and still has, my sympathy for all of the difficulties he faced upon his release from prison, especially his homelessness. Thus, I do not take petitioner's motion lightly. However, sympathy alone cannot dictate the outcome of petitioner's motion. The question presented by petitioner's motion is whether his circumstances represent an "extraordinary circumstance" that would justify relief pursuant to RCFC 60(b)(6). For the reasons discussed below, I conclude that they do not. In fact, my conclusion is that the facts of this case do not even rise to a level that would have supported excusable neglect had petitioner's claim under RCFC 60(b)(1) not been time-barred.

Petitioner suggests in his motion that he was justified in failing to maintain contact with the court because he thought he had moved for a stay and "assumed" that he could notify the court of his intent to continue his case at a time of his choosing. (ECF No. 65, p. 1.) However, this is not a reasonable interpretation of the procedural history of the case.

Petitioner is referring to the Status Report he filed on September 7, 2021. (ECF No. 47.) In that status report, petitioner stated that "[p]etitioner is scheduled for release on Nov. 16th 2021 and he intends to get a complete and accurate cause of his other medical issues as to dispute or provide objective evidence that would support a finding in my favor." (*Id.*) In light of petitioner's status report, I issued the Scheduling Order of September 9, 2021. (ECF No. 48.) That order specified that "I am construing

---

[12] That is, unique in that the process of reentering society after imprisonment is a distinct circumstance not necessarily comparable to what other petitioners are experiencing as they prosecute their claims.

petitioner's status report as a motion to stay the case *pending his release from prison."* (*Id.* (emphasis added).) Thus, petitioner was advised in this order that his stay request, which was not even granted, was only to be entertained with respect to his duty to prosecute *during* his remaining incarceration. But in any event, I further explained that

> Petitioner is also advised that he will have a continuing obligation to maintain contact with the court and that any order granting his motion to stay will require petitioner to provide updated contact information where he can be reached following his release from prison. <u>Failure to provide current and accurate contact information will not prevent this case from being involuntarily dismissed should petitioner fail to prosecute</u>.

(*Id.* (underlining in original, bolding omitted).)

While petitioner denies receipt of some subsequent orders, he does not deny having received my Scheduling Order issued September 9, 2021 that cautioned him to maintain up to date contact information. (ECF No. 48.) Thus, in the instant motion, petitioner acknowledges that he "knows that he did have an obligation to keep the Court notified." (ECF No. 65, p. 2.) Therefore, the fact that petitioner alleges that he did not receive my subsequent orders of November and December of 2021, or the decision of April 2022, is not dispositive as this is ultimately a product of his own failure to provide sufficient contact information to the court. *E.g.*, *Kompothecras v. Sec'y of Health & Human Servs.*, No. 02-0110V, 2013 WL 1881022, at *7 (Fed. Cl. Spec. Mstr. Jan. 29, 2013) (finding that counsel's failure to provide updated contact information does not support a finding of excusable neglect that would permit equitable relief under RCFC 60(b)(1)); *Koopman v. United States*, 151 Fed. Cl. 336, 339-40 (2020) (finding a failure by *pro se* litigants to provide current contact information and failure to respond to subsequent orders supports involuntary dismissal for failure to prosecute), *motion for reconsideration granted in part*, 151 Fed. Cl. 751 (2021).

The fact that petitioner's parole officer did not timely forward petitioner's mail to him, while unfortunate, also does not affect the outcome. The parole office was never identified by petitioner as a means of contacting him and petitioner never had any reasonable expectation that the parole officer would keep him informed of the status of his vaccine case. Rather, the Order to Show Cause explained:

> [P]etitioner has not provided updated contact information since his release from prison; however, a review of the Wisconsin Department of Corrections Offender Locator indicates that he is under active community supervision with Unit 712 of the Department of Corrections parole office. Accordingly, the clerk is directed to mail a copy of this order to both petitioner's last known address at Waupun Correctional Institution as indicated on the docket of this case and [the parole office].

(ECF No. 58, p. 5.) In other words, entirely unbeknownst to petitioner, the court *sua sponte* used enhanced measures to try to overcome petitioner's failure to provide

14

current contact information.  The fact that this added effort failed does not alter the nature of the issue – petitioner *knowingly* failed to maintain appropriate contact with the court.  Thus, the parole office's failure to forward the undersigned's orders is simply a further symptom of petitioner's own inaction.

The parole officer's failure to provide petitioner his mail does not explain why petitioner did not himself provide updated contact information as directed by my prior order or otherwise take appropriate steps to prosecute his case, or at a bare minimum understand its status.  Contrary to what is suggested in the instant motion, the procedural history confirms that at the time petitioner stopped communicating with the court he understood his claim was potentially subject to dismissal. In particular, the representations in petitioner's motion indicate that the last order petitioner received was my order holding petitioner's own motion to dismiss in abeyance for only 30 days.[13] (ECF No. 51.)

Petitioner's most sympathetic argument is that following his release from prison he was homeless.  However, standing alone, this does not support his motion.  A number of courts have held that the fact of homelessness does not in itself support relief under FRCP 60(b)(1) for excusable neglect.  *Modesitt v. Wexford Med.*, No. 1:21-cv-1711, 2023 WL 348270 (S.D. Ind. Jan. 20, 2023) (explaining that "[t]he court accepts as true that Mr. Modesitt experienced homelessness after his release from incarceration. But at no time did he contact the Court with a phone number or email address or request an extension of pretrial deadlines on account of his homelessness before dismissal of this case."); *Figueroa v. City of Corpus Christi*, No. 2:15-CV-339, 2016 WL 7228553 (S.D. Tex. Dec. 14, 2016) (stating that "[b]eing homeless and a *pro se* litigant alone is not authority to reinstate the complaint"); *Turner v. Nev. Dep't of Corr.*, No. 2:13-cv-1740, 2016 WL 4203818, at * 4 (explaining that "it was not until April 2016 – after he had been re-arrested and jailed – that he bothered to discover what had transpired in his case.  While I am sympathetic that Turner is a pro se plaintiff with pauper status whose mail was returned to the court because he was homeless for three months, that still leaves four months where he had shelter but ignored this case." (footnote omitted)), *aff'd*, 695 F. App'x 336 (mem) (9th Cir. 2017); *see also Harris v. Emanuele*, 826 F. App'x 567, 569 (7th Cir. 2020) (explaining that "even if Harris had no new mailing address after the fire, he should have told the court that his old address was no longer valid.  But

---

[13] Petitioner's final filing prior to the entry of judgment was his motion to withdraw his motion to dismiss. (ECF No. 56.)  To be clear, my order of October 15, 2021, did not specifically require petitioner to file a *motion* to withdraw his motion to dismiss, only to inform the court if he wished to withdraw the motion to initially avoid involuntary dismissal.  (ECF No. 54.)  However, the prayer for relief included in petitioner's follow up filing (styled as a "status report") was "[f]or an order granting this motion to continue this claim." (ECF No. 56.)  Thus, the filing was docketed as a motion to withdraw the motion to dismiss.  In his filing, petitioner also specifically asked for further guidance on how to proceed with his claim.  (*Id.*)  Therefore, it is patent on the face of his last filing prior to entry of judgment that petitioner understood at that time both that his motion to voluntarily dismiss remained pending and that he did need to continue prosecuting the claim.

15

he did not. . . . Harris's inability to receive mail did not relieve him of his obligation to monitor the court's docket and thereby respond promptly to the dismissal of his case.")

If homelessness does not substantiate excusable neglect, then *a fortiori* it is not compelling without more as evidence of extraordinary circumstances.[14]  Moreover, there are several factors that counsel against accepting the fact of petitioner's homelessness as dispositive of any "extraordinary circumstance" in this particular case.  Petitioner does not provide any details regarding the length of his homelessness or the specific circumstances of his homelessness.  In fact, petitioner does not indicate anything more than that he lacked a mailing address at which he could receive physical mail.  (ECF No. 65, p. 1.)  However, petitioner acknowledges in his motion that he was aware of his obligation to maintain contact with the court and further asserts that he did have the wherewithal to telephone the court on at least one occasion.  (*Id*. at 1-2.)  Yet, as previously noted, petitioner's representation without further detail that he made a single phone call to the court over a two-year period is not strong evidence of diligence.  (*See supra* n. 2.)  Further, although he asserts having no physical address, he does indicate that he has an unspecified e-mail address through which he would have been capable of receiving information from the court had he acted more diligently.  (ECF No. 65, p. 1; *see also supra* note 2.)

### d. Petitioner's Claim under RCFC60(b)(6) is Also Untimely in that it was Not Filed Within a Reasonable Period of Time After Judgment

Even in the absence of any specific time limit, motions pursuant to RCFC 60(b) must be made "within a reasonable time."  However, petitioner in this case waited over one year and eight months to seek relief from judgment.  Even after considering all of petitioner's arguments above, I cannot conclude that this represents a reasonable timeframe.  Prior to the instant motion, petitioner's last filing was his motion to withdraw his motion to dismiss, which was filed on October 28, 2021, more than two full years before he sought relief from judgment.  (ECF No. 56.)  The judgment itself was not issued until approximately six months after his last contact with the court.

Although petitioner notes that he did not specifically become aware of the fact of the judgment until February of 2024, that is a consequence of petitioner's own inaction, as discussed above.  Moreover, petitioner was at all times aware that he had a continuing obligation to prosecute his case and that he had failed to maintain contact with the court during that period.  Thus, petitioner should have been aware of the risk of dismissal and acted accordingly.  Ultimately then, petitioner's own failure to inform himself of the status of his case does not serve as any justification for his over 20-month delay in seeking to reopen judgment.  Therefore, even if one or more of the circumstances cited by petitioner could potentially be viewed as representing an

---

[14] I do note that in *Checo v. Shinseki*, a case cited by petitioner, the Federal Circuit did accept homelessness as an extraordinary circumstance in the context of equitable tolling.  748 F.3d at 1378-79.  Importantly, however, that acceptance was based on the respondent's stipulation of the point specific to that case.

extraordinary circumstance that prevented him from *initially* avoiding entry of the judgment dismissing the case, I would still deny petitioner's motion based on his inordinate delay in filing this motion.

### e. Petitioner's Reliance on Equitable Tolling is Unavailing

Finally, I note that petitioner's reference to equitable tolling does not change the outcome. "When the 'rules invoked' – whether criminal or civil – 'show a clear intent to preclude tolling, courts are without authority to make exceptions' . . . ." *United States v. Williams*, 56 F.4th 366, 372 (4th Cir. 2023) (quoting *United States v. Marsh*, 944 F.3d 524, 531 (4th Cir. 2019)). Because RCFC 6(b)(2) forbids the court from extending time under either RCFC 59(b) or 60(b), this "inflexible treatment" precludes any discretion to allow equitable relief. *Accord Williams*, 56 F.4th at 372 (denying equitable relief under FRCP 60(b) due to FRCP 6(b)(1)); *see also Freeman*, 35 Fed. Cl. at 283 (characterizing the one-year limitation of RCFC 60(c) as an "absolute bar" to motions filed after that period). Thus, the equitable tolling petitioner seeks is not available in this context.

In any event, as petitioner acknowledges in his motion, the availability of equitable tolling is predicated on both extraordinary circumstances and diligence in pursuing one's rights. *Checo*, 748 F.3d at 1378. For all the reasons discussed above, I have concluded that petitioner has demonstrated neither. Moreover, to the extent petitioner specifically urges a "stop clock" approach to his filing obligation, he has not presented sufficient factual details in his motion to identify any specific period of tolling.

## V. Conclusion

For all the reasons discussed above, petitioner's motion is **DENIED**.

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master